2010 BNH 004     Note:  This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 06-11539-JMD |
| | Chapter 7 |
| Simply Media, Inc., | |
|         Debtor | |
| | |
| Steven M. Notinger, | |
| Chapter 7 Trustee, | |
|         Plaintiff | |
| | |
| v. | Adv. No. 08-1114-JMD |
| | |
| Thomas E. Black, | |
| Lee McLemore, and | |
| Christina Brown a/k/a | |
| Christina Rago, | |
|         Defendants | |

*Todd B. Gordon*
*The Gordon Law Firm LLP*
*Boston, Massachusetts*
*Attorney for Plaintiff*

*Joshua E. Menard, Esq.*
*Preti Flaherty, PLLP*
*Concord, New Hampshire*
*Attorney for Defendant Thomas E. Black*

## MEMORANDUM OPINION

### I.  INTRODUCTION

     Counts I and II of the complaint in this adversary proceeding seek to hold Thomas E.

Black ("Black"), a former director of Simply Media, Inc. (the "Debtor" or "Simply Media"),

personally liable for monetary losses the Debtor endured purportedly as a result of Black's

alleged breaches of duty as a director of the Debtor.  On January 14, 2010, the Court held a hearing on the Motion of Thomas E. Black for Summary Judgment on Counts I and II of the Complaint (Doc. No. 138) (the "Motion") and the Opposition of Steven M. Notinger, Trustee in Bankruptcy of Simply Media, Inc. to Thomas E. Black's Motion for Summary Judgment on Counts I and II of the Complaint (Doc. No. 145) (the "Objection").  In support of the Motion, Black filed a memorandum of law and three affidavits (Doc. Nos. 139, 140, and 141).  Steven M. Notinger, the chapter 7 trustee of the bankruptcy estate of Simply Media (the "Trustee"), filed a memorandum of law and an affidavit (Doc. No. 142) in support of the Objection.  Having considered the pleadings, the summary judgment record, and the argument of counsel at the hearing, and for the reasons set forth below, the Court shall grant the Motion, and judgment shall issue in favor of Black.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving

party."  Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)).  "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law."  Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

> [T]he role of summary judgment is to "pierce the pleadings" and to determine whether there is a need for trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  The moving party must "put the ball in play" by averring the absence of any genuine issue of fact.  Id. at 48.  Once the ball is in play, however, the non-moving party must come forward with competent evidence to rebut the assertion of the moving party.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Not every factual discrepancy is sufficient to defeat a motion for summary judgment.  "[E]vidence that 'is merely colorable or is not significantly probative'" cannot defeat the motion.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

Evans Cabinet Corp. v. Kitchen Int'l, Inc., No. 08-2579, 2010 WL 366740, at *4 (1st Cir. Feb. 3, 2010).

    **A.**    **Undisputed Facts**

The summary judgment record establishes the following undisputed facts.  The Debtor is a Delaware corporation that was in the business of retail software sales.  In 1999, Black met with Deaver Brown ("Brown"), the founder and president of Simply Media, to discuss Black possibly investing money in the company.  Black made an initial investment of $50,000 and a series of subsequent investments totaling $115,000, for a total investment of $165,000.  Shortly after his initial investment, Black became a director of the Debtor and served as a director from 1999

3

through November 2005.  Black served as chairman of the board of directors for most of his tenure on the board.

Simply Media was a small company with only a few initial investors and stockholders. The company arranged for the manufacture and shipment of bargain CD-ROM software titles to various retail outlets.  There were no manufacturing facilities and no store front operations.  The company operated out of an office located in Brown's personal residence.

During his time as a director, Black chaired meetings of the board of directors which occurred several times a year.  Minutes from the meetings show that the directors discussed Simply Media's current business situation as well as future prospects and how to pursue them. The board advised and reviewed product development, manufacturing costs, and sales efforts. The meeting minutes also reflect discussions regarding the hiring of an accountant or chief financial officer ("CFO").  No accountant or CFO was ever retained to review Simply Media's financial information or to prepare and file its tax returns; Black alleges that the board decided the cost to do so was prohibitive.

In 2005, a dispute arose between Simply Media and one of its stockholders, Bradley Reifler ("Reifler"), regarding the payment of a "put" option.  The dispute eventually led to a lawsuit in which Black was subpoenaed to a deposition.  At that deposition, conducted on November 9, 2005, Black was told that Brown was using corporate funds to pay his and his family's personal expenses.  He also learned that Brown had not been forthcoming about Simply Media's handling of the Reifler matter.  After the deposition, Black resigned from the board.

In the summer and fall of 2005, Brown liquidated the inventory of Simply Media without the knowledge of the Debtor's board of directors.  It also appears that Simply Media abandoned its accounts receivable and transferred intellectual property to another company known as

Simply Magazine.  By the time Simply Media filed chapter 7 bankruptcy on November 13, 2006, Simply Media had no assets.  In 2008, this Court and the United States District Court for the District of New Hampshire issued judgments against Brown and his wife, finding that they had improperly transferred assets and used Simply Media's funds for their own personal benefit in an amount totaling at least $1.1 million.

### B.  Disputed Facts

The Trustee disputes many of the facts alleged by Black in support of his motion for summary judgment, but the Trustee fails to point to significant probative evidence in the summary judgment record to support his disagreements.  Unlike Black, who does point to evidence in the summary judgment record to support his factual assertions, the Trustee disputes many of Black's allegations by indicating simply that he is "without information sufficient to form a belief" as to Black's allegations.  This is insufficient.  Id.; see LBR 7056-1(b)(1)(B).

The major disputed fact is whether Simply Media ever employed a bookkeeper.  Both Black and Brown indicate in their affidavits that Simply Media did employ a bookkeeper; however, the name of the bookkeeper has never been identified and no documentation has been produced that would corroborate Black's and Brown's assertions.  The Trustee asserts that no bookkeeper was ever employed.

### C.  Legal Analysis

#### 1.  Delaware Law

As previously described by this Court in Notinger v. Costa (In re Robotic Vision Sys., Inc.), 374 B.R. 36 (Bankr. D.N.H. 2007),

> "The directors of Delaware corporations have a triad of primary fiduciary duties: due care, loyalty, and good faith. . . .  The shareholders of a Delaware corporation are entitled to rely upon their board of directors to discharge each of their three

5

primary fiduciary duties at all times." Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001). . . .

> [Delaware law] presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." Those presumptions can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or loyalty or acted in bad faith. If that is shown, the burden then shifts to the director defendants to demonstrate the challenged act or transaction was entirely fair to the corporation and its shareholders.

Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.), 906 A.2d 27, 52 (Del. 2006) (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) and citing Emerald Partners, 787 A.2d at 91; Brehm v. Eisner, 746 A.2d 244, 264 n.66 (Del. 2000)). "The business judgment rule operates as a procedural guide for litigants and as a substantive rule of law." Emerald Partners, 787 A.2d at 90. "[D]irectors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." Brehm, 746 A.2d at 264 n.66; see also Aronson, 473 A.2d at 812.

The duty of care relates to the process by which fiduciaries make decisions; courts "do not measure, weigh or quantify directors' judgments." Brehm, 746 A.2d at 264. Rather, as long as a director's decision is "the product of a process that was either deliberately considered in good faith or was otherwise rational," grounds do not exist to impose liability on a director for breach of the duty of care. In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996); see Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242 (3d Cir. 2005) (suggesting a breach of the duty of care occurs when directors engage in an irrational decision-making process). "[I]n making business decisions, directors must consider all material information reasonably available, and . . . the directors' process is actionable only if grossly negligent." Brehm, 746 A.2d at 259. Decisions that are "substantively wrong" or "stupid" or "egregious" or even "irrational" form no basis for director liability absent allegations that a director acted without due care, i.e., the director employed a decision making process that lacked good faith or rationality. Caremark Int'l, 698 A.2d at 967.

The duty of loyalty has two elements: independence and disinterestedness. Orman v. Cullman, 794 A.2d 5, 23 (Del. Ch. 2002). "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences. . . . [E]ach director [must

6

>have] brought his or her own informed business judgment to bear with specificity
>upon the corporate merits of the issues without regard for or succumbing to
>influences which convert an otherwise valid business decision into a faithless
>act." <u>Aronson</u>, 473 A.2d at 816.
>
>. . .
>
>A director is considered "interested," and thus disloyal, when "(1) the director
>personally receives a benefit (or suffers a detriment), (2) as a result of, or from,
>the challenged transaction, (3) which is not generally shared with (or suffered by)
>the other shareholders of his corporation, and (4) that benefit (or detriment) is of
>such subjective material significance to that particular director that it is
>reasonable to question whether that director objectively considered the
>advisability of the challenged transaction to the corporation and its shareholders."
><u>Orman</u>, 794 A.2d at 25 n.50. . . .
>
>Breach of the duty of good faith involves "intentional dereliction of duty" or "a
>conscious disregard for one's responsibilities." <u>Walt Disney Co.</u>, 906 A.2d at 65-
>66.  In general, bad faith involves "the conscious doing of a wrong because of
>dishonest purpose or moral obliquity; it is different from the negative idea of
>negligence in that it contemplates a state of mind affirmatively operating with
>furtive design or ill will." <u>Desert Equities, Inc. v. Morgan Stanley Leveraged
>Equity Fund, II, L.P.</u>, 624 A.2d 1199, 1208 n.16 (Del. 1993).

<u>Robotic Vision Sys.</u>, 374 B.R. at 45-47 (footnotes omitted).

### 2. Trustee's Complaint

The Trustee's complaint seeks damages for Black's alleged breach of the fiduciary duties outlined above.  In Count I, the Trustee alleges that Black breached his fiduciary duty of loyalty "by consciously ignoring his oversight responsibilities and demonstrating indifference and inaction in the face of his duty to act."  The Trustee states that "the extreme level of indifference exhibited by Chairman Black amounts to bad faith."[1]  In Count II, the Trustee alleges that Black breached his fiduciary duty of care "by failing to exercise the required due care attendant to his position as a Director" and by failing to "inform himself as to the acts and omissions of Deaver

---

[1] The Court previously dismissed Count I to the extent that it asserted a claim for breach of the duty of loyalty based on self-interest.

and Christina Brown with regard to Simply Media and thus failed to prevent the harm."[2]  In essence, the Trustee argues that, as a director, Black owed Simply Media a duty to actively supervise and monitor the management of Simply Media, and Black consciously disregarded this duty.  In support of his claim that Black breached his fiduciary duties of due care, loyalty, and good faith, the Trustee cites the following as evidence of Black's lack of oversight:

1. Black failed to implement any reporting or information systems or controls and did not review Simply Media's business documents, e.g., invoices, receipts, and tax returns.

2. Black failed to retain an accountant to review the Debtor's financial information.

3. Black failed to implement a document retention policy and allowed Brown to liquidate and transfer Simply Media's assets.

The Trustee cites In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996), and Bridgeport Holdings, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc)., 388 B.R. 548 (Bankr. D. Del. 2008), as legal support for the Trustee's "oversight liability" claims.  Caremark describes a breach of the duty to monitor corporate operations as a breach of the duty of attention or care and states "[t]he theory here advanced is possibly the most difficult theory of corporate law upon which a plaintiff might hope to win a judgment."  Caremark, 698 A.2d 967.  "[T]he statutory duties and common law fiduciary responsibilities that directors of a Delaware corporation are required to discharge depends upon the specific context that gives occasion to the board's exercise of its business judgment."  McMullin v. Beran, 765 A.2d 910, 918 (Del. 2000) (cited in Bridgeport, 388 B.R. at 570).  The Caremark court noted that "[l]egally, the board itself will be required only to authorize the most significant corporate acts or transactions:  mergers, changes in capital structure, fundamental changes in business,

---

[2]  The Court also previously dismissed Counts I and II to the extent they asserted claims arising before November 13, 2003, as those claims are barred by the statute of limitations.

appointment and compensation of the CEO, etc." Caremark, 698 A.2d at 968. The board is not required "to possess detailed information about all aspects of the operation of the enterprise." Id. at 971.

### a. Reporting Systems and Review

The Trustee contends that the board never implemented any compliance or reporting system. He does not describe, however, what type of system or controls should have been in place. Rather, he cites to Caremark, which discussed the need for compliance and reporting systems, but that case involved liability for losses for failing to comply with applicable federal and state laws and regulations applicable to health care providers. The Trustee does not allege that the Debtor similarly failed to have a system in place that would have prevented it from violating the law. Instead, the Trustee simply argues that Black should have been reviewing other company documents, e.g., invoices, purchase orders, bank statements, and the like, which presumably would have alerted Black and the other directors that Brown was acting inappropriately.

However, Caremark makes clear that directors are not required to have detailed information about all aspects of a company's operations and states that "the level of detail that is appropriate for such an information system is a question of business judgment." Caremark, 698 A.2d at 970. The summary judgment record indicates that Black routinely reviewed financial statements and was engaged in frequent communications with Brown regarding company operations. Black tested the Debtor's customer support functions and independently confirmed that its product was being sold in a local store. Black did seek out a certain level of information from Brown, which seemed appropriate to him given the nature of the Debtor's business at the time, a start-up operating out of the basement of Brown's home. Even if in retrospect it appears

that Black should have sought more or different information, his actions are protected by the business judgment rule as the Trustee has not pointed to any evidence in the summary judgment record to support a finding that Black acted in bad faith or irrationally.

The Trustee also makes much of Black's 2006 deposition testimony regarding the reasons he resigned from Simply Media's board of directors:

> I wasn't sure that I had appropriate information to continue serving as a director of the company. That, at least on an ethical level, I wasn't doing the job that I was supposed to be doing. And that other shareholders might be expecting some things from me or that I might have knowledge of the company that I simply didn't have.

The Court is not persuaded that the angst expressed by Black at his deposition alone can support a claim for breach of fiduciary duty. The Court finds that the Trustee has failed to meet the high burden of demonstrating that Black failed to ensure that the directors were given enough information and reports by the Debtor's management.

### b. Accountant

The Trustee argues that Black and the other directors should have required the Debtor to hire an accountant or CFO to review its books and records. The Trustee has pointed to no legal requirement that Simply Media hire an independent third party to review its books and records. The summary judgment record reveals that the directors considered hiring such a person, actually had a candidate for the job, but then ultimately decided to postpone such a hiring due to the cost involved. The Trustee has not pointed to any significant probative evidence in the summary judgment record to support a finding that this decision by the board is not protected by Delaware's business judgment rule.

### c.     Document Retention Policy and Transfer of Assets

The Trustee contends that Black breached his duties by failing to require a document retention policy and by not informing himself as to the acts and omissions of Brown and his wife with regard to Simply Media. "The fiduciary duty of due care requires that directors of a Delaware corporation both: (1) 'use that amount of care which ordinarily careful and prudent men would use in similar circumstances'; and (2) 'consider all material information reasonably available.'" Bridgeport, 388 B.R. at 568. The Trustee points to no evidence that demonstrates red flags existed that would have put Black on notice that Brown was acting inappropriately by failing to retain company documents and by using company funds to pay personal expenses and eventually liquidating inventory.

The evidence in the summary judgment record supports a finding that Black received documentation from Brown when asked. Black was able to produce over 800 pages of corporate information to the Trustee during discovery. The evidence in the summary judgment record does not support a finding that Black can be faulted for being unaware that Brown was not retaining those same documents on behalf of the company.

Black is not liable solely because, after the fact, it was discovered that Brown was engaged in fraudulent activity, i.e., looting the company and liquidating assets for little consideration. The Trustee has not presented any evidence in the summary judgment record that Black did not act as any ordinarily careful and prudent man would in similar circumstances or that he did not consider all material information reasonably available to him. Therefore, the summary judgment record does not support a finding that Black was guilty of a sustained failure to exercise his oversight function. Rather, the documents produced by Black during discovery

11

suggest that he made a good faith attempt to be informed of relevant facts regarding Simply Media's finances and its ongoing operations.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that there are no genuine issues of material fact that would require a trial of this matter.  Upon consideration of the undisputed facts, the Court finds that the Trustee has not established that Black breached his fiduciary duties as a director of Simply Media under Delaware law as alleged.  Accordingly, summary judgment shall be granted in Black's favor on Counts I and II of the complaint.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   February 4, 2010                             /s/ J. Michael Deasy
                                                     J. Michael Deasy
                                                     Bankruptcy Judge